IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-01583-PAB-NYW

CHATEAU VILLAGE NORTH CONDOMINIUM ASSOCIATION,
a Colorado corporation,

      Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
a Wisconsin corporation,

      Defendant.

---

## ORDER

---

This matter is before the Court on plaintiff's Partial Motion for Judgment as a

Matter of Law Pursuant to F.R.C.P. 56 [Docket No. 51] filed on July 20, 2015 by

Chateau Village North Condominium Association (the "Association") and on defendant's

Motion for Summary Judgment [Docket No. 52] filed on July 20, 2015 by American

Family Mutual Insurance Company ("American Family").  This Court has jurisdiction

pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND[1]

This case arises out of an insurance coverage dispute.  The Association is

responsible for the operation, maintenance, preservation, and control of the Chateau

Village North Condominiums ("Chateau Village Condos") in Boulder, Colorado.  Docket

No. 52 at 2, Statement of Undisputed Material Facts ("SUMF") 1.  The Association

---

[1]The following facts are undisputed unless otherwise indicated.

purchased a commercial property and liability insurance policy (the "policy") from

defendant American Family, which became effective on February 1, 2013.  *Id*., SUMF

2.  The policy contains an exclusions section at Section I.B.  *Id*. at 2-3, SUMF 3.  The

exclusions section is prefaced with an anti-concurrent causation clause ("ACC"):

> B.  Exclusions
>     1.  We will not pay for loss or damage caused directly or indirectly
>     by any of the following.  Such loss or damage is excluded
>     regardless of any other cause or event that contributes concurrently
>     or in any sequence to the loss.  These exclusions apply whether or
>     not the loss event results in widespread damage or affects a
>     substantial area.

*Id*.; Docket No. 52-1 at 2.  Section I.B.1.g. of the exclusions section excludes coverage

for the following:

> g.  **Water**
>     (1)  Flood, surface water, waves, tides, tidal waves, overflow of any
>     body of water, or their spray, all whether driven by wind or not;
>     (2)  Mudslide or mudflow;
>     (3)  Water that backs up or overflows from a sewer, drain or sump;
>     or
>     (4)  Water under the ground surface pressing on, or flowing or
>     seeping through:
>           (a)  Foundations, walls, floors or paved surfaces;
>           (b)  Basements, whether paved or not; or
>           (c)  Doors, windows or other openings.
>     But if Water, as described in Paragraphs (1) through (4) results in
>     fire, explosion or sprinkler leakage, we will pay for the loss or
>     damage caused by that fire, explosion or sprinkler leakage.

Docket No. 52 at 3, SUMF 4; Docket No. 52-1 at 3.

The policy includes a Condominium Enhancement Endorsement (the

"endorsement").  *See* Docket No. 52 at 3-4, SUMF 5.  At Section XVI, the endorsement

adds coverage for sewer backup and sump overflow and replaces the water exclusion

at Section I.B.1.g of the policy with language that omits any reference to sewer, drain,

or sump backup.  *Id*., SUMFs 5-6.  Section XVI of the endorsement reads:

XVI.  **Sewer Back-Up and Sump Overflow**
The following is added to paragraph A.5. Additional Coverages:

**Sewer Back-Up and Sump Overflow**

1.  We will pay for direct physical loss or damage to Buildings or Business Personal Property, covered under Section I–Property, caused by or resulting from:
A.  Water which backs up through or overflows from a sewer or drain; or
B.  Water which overflows from a sump, even if the overflow results from mechanical breakdown of a sump pump or its related equipment.
However, with respect to paragraph XVI.1.b above, we will not pay the cost of repairing or replacing a sump pump or its related equipment in the event of a mechanical breakdown.

2.  We will not pay for loss or damage caused by sewer or sump back up or overflow which occurs or is in progress within five (5) days of the effective date of this endorsement.

3.  The coverage described in paragraph XVI.1 of this endorsement does not apply to loss or damage resulting from an insured's failure to:
A.  Keep a sump pump or its related equipment in proper working condition; or
B.  Perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions.

4.  With respect to the coverage provided under paragraph XVI., Exclusion B.1.g. Water in Section I–Property is replaced by the following exclusion:
**Water**
(1)  Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;
(2)  Mudslide or mudflow; or
(3)  Water under the ground surface pressing on, or flowing or seeping through:
(a)  Foundations, walls, floors or paved surfaces;
(b)  Basements, whether paved or not; or
(c)  Doors, windows, or other openings.

3

> But if water, as described in paragraph XVI.4. results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion, or sprinkler leakage.
> 5.  The most we will pay for loss or damage in any one occurrence is $300,000 per location.

*Id*. at 3-5, SUMFs 5-7; Docket No. 52-1 at 5.

Following severe rainstorms in September 2013 in Boulder, on September 12, 2013 Chateau Village Condos sustained water damage.  Docket No. 52 at 5, SUMFs 8-9.  The rainstorms caused sewer backups affecting Chateau Condo units and common areas.  *Id*., SUMF 10; *see* Docket No. 51 at 2, SUMF 3.  The sewer backups were the result of groundwater infiltrating the sewer system.  Docket No. 52 at 5, SUMF 10.  Luke McConnell, president of the Association's Homeowners Association ("HOA"), reported to others that "the damage was caused by two things: sewer back up and rain water."  Docket No. 52 at 6, SUMF 14.  Mr. McConnell was contacted by unit owners on the night of the water intrusion and was told that water was collecting on the patio of at least one unit.  Docket No. 52 at 5, SUMF 13.

Plaintiff made a claim under the policy.  Defendant inspected the subject property twice, on September 19, 2013 and October 5, 2013.  *Id*., SUMF 12.  On September 19, 2013, Mark Foresee inspected the property on behalf of defendant.  *Id*. at 6, SUMF 15.  Mr. Foresee's note from the September 19, 2013 inspection states: "I found water damage to the walls and floor covering in all rooms.  This water entered in thru the exterior doors and foundation."  Docket No. 52-6 at 5.  In its September 20, 2013 letter, defendant explains:

> [Regarding claim for damage to Building A:] The inspections of the following properties revealed that surface and ground water has seeped through the door and foundation areas. In addition, water has backed up

4

and overflowed from the toilets and bathtub drains. The surface and
ground water mixed with the water that backed up and overflowed from
the toilets and bathtub drains causing material damages in the buildings.
Since the surface water mixed with the water that backed up through the
toilets and bathtub drains, we are unable to separate the water damages.

**

[Regarding claim for damage to the Clubhouse and Buildings B, C, and
D:] The interior water damages are excluded under the
BUSINESSOWNERS COVERAGE FORM, []. Please refer to page
eleven, B. Exclusions, page twelve, g. Water. (1)-(4). Based on the policy
exclusion, we will be unable to provide coverage for the interior water
damages as indicated above in the described loss locations.

Docket No. 51-9 at 1; *see* Docket No. 51 at 4, SUMFs 6, 8.

Scott Jones re-inspected the property on October 5, 2013. Docket No. 52 at 6,

SUMF 16. Mr. Jones' recollection of his conversation with Mr. McConnell and Brenda

Feldman, property manager for the Association, is that there were two causes of loss in

all affected buildings–(1) rainwater/groundwater/surfacewater[2] and sewer-backup water.

*See* Docket No. 52 at 6, SUMF 17; Docket No 51-3 at 1. Mr. Jones' determination that

there was overlap between sewer-backup water and ground or surface water was

based in large part on the representations of Mr. McConnell and Ms. Feldman to that

effect. Docket No. 52 at 6, SUMF 19. Mr. Jones' notes indicate that a video shows

water entering through the foundation wall. Docket No. 51-3 at 1. On September 20,

2013, defendant denied plaintiff's insurance claims. Docket No. 51-9.

On March 3, 2014, plaintiff initiated this action. Docket No. 1 at 1. Plaintiff

---

[2]Mr. Jones uses the terms groundwater and surface water interchangeably to
mean the same thing, Docket No. 52-7 at 3 (Jones Depo., 52:15-19), and explains that
Mr. McConnell and Ms. Feldman referred to groundwater and surface water as
rainwater. Docket No. 51-3 at 1.

asserts three claims for relief: (1) breach of contract; (2) common law bad faith breach of insurance contract; and (3) violation of Colo. Rev. Stat. § 10-3-1115.  Plaintiff moves for summary judgment on its breach of contract claim.  Docket No. 51 at 16.  Specifically, plaintiff argues that (1) the Section B exclusions do not apply to the sewer backup coverage in the endorsement, *id*. at 6, (2) any rain water that flowed into the sewer system is not "surface water," *id*. at 14, and (3) any rain water that traveled through sewer pipes and backed up into the condos is not excluded from coverage.  *Id*.  Defendant moves for summary judgment on all claims.  Docket No. 52 at 2.  Defendant seeks a determination that, if surface water or ground water contributed to the damage plaintiff alleges, then the ACC precludes recovery by plaintiff.  *Id*.  Defendant also argues that plaintiff's common law and statutory bad faith claims should be denied because defendant acted reasonably and plaintiff's claim was denied for "fairly debatable reasons."  *Id*.

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is warranted when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An

issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal quotation marks omitted)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115 (citation omitted). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010). However, where, as here, there are cross motions for summary judgment, the reasonable inferences drawn from affidavits, attached exhibits, and depositions are rendered in the light most favorable to the non-prevailing party. *Jacklovich v. Simmons*, 392 F.3d 420, 425 (10th Cir. 2004). Furthermore, "[w]hen the parties file cross motions

for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (internal quotation marks omitted).

## III. ANALYSIS

### A. Applicability of ACC to Endorsement

An insurance policy is a contract, which should be interpreted consistently with the well-settled principles of contractual interpretation. *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990). The interpretation of an insurance policy is a matter of law. *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002). The words of a contract should be given their plain meaning according to common usage and strained constructions should be avoided. *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 18 (Colo. 1990).

American Family contends that the ACC applies to the language in the endorsement adding coverage for sewer backups. Docket No. 52 at 10. Plaintiff contends that the endorsement does not specifically state that the sewer backup provision is subject to any exclusions and that no exclusions can be implied from the policy language. Docket No. 51 at 7.

The policy is entitled "Businessowners Policy" and generally insures against property damage to the Chateau Village Condos. Docket No. 51-1. Section I.A.3 defines "Covered Causes of Loss" as "Risks of direct physical loss unless the loss is: a.

8

excluded in Paragraph B. Exclusions in Section I; or b. Limited in Paragraph 4.

Limitations in Section I."  Docket No 51-1 at 10.  Section I.B.1.g. of the policy excludes

coverage for:

> (1)  Flood, surface water, waves, tides, tidal waves, overflow of any body
> of water, or their spray, all whether driven by wind or not;
> (2)  Mudslide or mudflow;
> (3)  Water that backs up or overflows from a sewer, drain or sump; or
> (4)  Water under the ground surface pressing on, or flowing or seeping
> through:
>> (a)  Foundations, walls, floors or paved surfaces;
>> (b)  Basements, whether paved or not; or
>> (c)  Doors, windows or other openings.

Docket No. 51-1 at 20.  Thus, the basic terms of the policy exclude coverage for

damage or loss due to sewer drain backup.

Plaintiff's policy, however, contains an endorsement called the "Condominium

Enhancement Endorsement."  Docket No. 51-2 at 35.  The endorsement includes

additional coverage for "Sewer Back-Up and Sump Overflow" in Paragraph XVI.  The

Endorsement adds the following language to Section A.5, "Additional Coverages":[3]

**Sewer Back-Up and Sump Overflow**

> 1.  We will pay for direct physical loss or damage to Buildings or
> Business Personal Property, covered under Section I–Property,
> caused by or resulting from:
>> A.  Water which backs up through or overflows from a sewer
>> or drain; or
>> B.  Water which overflows from a sump, even if the overflow
>> results from mechanical breakdown of a sump pump or its
>> related equipment.
> However, with respect to paragraph XVI.1.b above, we will not pay
> the cost of repairing or replacing a sump pump or its related
> equipment in the event of mechanical breakdown.

---

[3]The language in the endorsement adding the sewer backup coverage states:
"The following is added to paragraph A.5. Additional Coverages."  Docket No. 52-1 at 5.

*Id.* at 38.  Thus, Subparagraph 4 of Paragraph XVI replaces Exclusion B.1.g on water to eliminate the exclusion for sewer backup and sump overflow.[4]  *Id.*  The effect of the endorsement, as relevant here, is to add coverage for sewer backup and sump overflow and to eliminate the exclusion for the same in Section I.B.1.g.

Plaintiff argues that the endorsement does not state that the exclusion section of the policy, Section B, applies to the additional coverage added by the endorsement. Docket No. 70 at 7.  Plaintiff states that, "[b]ecause the Sewer Back-Up coverage is not expressly or implicitly subject to the paragraph B exclusions, the water exclusion contained within it cannot be used to defeat Chateau Village's claim." *Id*.  Plaintiff, however, provides no persuasive reason for its interpretation of the policy.  "An insurance policy and an endorsement attached to it must be considered as a single instrument, and they should be construed together in the absence of an internal conflict

---

[4]Subparagraph 4 provides:
4.  With respect to the coverage provided under paragraph XVI., Exclusion B.1.g. Water in Section I–Property is replaced by the following exclusion:

> **Water**
> (1)  Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;
> (2)  Mudslide or mudflow; or
> (3)  Water under the ground surface pressing on, or flowing or seeping through:
>> (a)  Foundations, walls, floors or paved surfaces;
>> (b)  Basements, whether paved or not; or
>> (c)  Doors, windows, or other openings.
> But if water, as described in paragraph XVI.4. results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion, or sprinkler leakage.

which cannot be reconciled." *Martinez v. Hawkeye-Security Ins. Co.*, 576 P.2d 1017,

1019 (Colo. 1978) (citation omitted).  Here, the endorsement describes how it modifies

the main policy.  Paragraph XVI.4 states that "Exclusion B.1.g. Water. . . is *replaced* by

the following exclusion" (emphasis added).  If the language from the endorsement

replaces the original language in the policy, policy provisions that related to or affected

the original language will similarly relate to or affect the new language provided by the

endorsement.  This reading of the endorsement is consistent with the holdings of other

courts interpreting the effect of an ACC in relation to an endorsement that replaces

policy language.  *See, e.g., Surabian Realty Co. Inc. v. NGM Ins. Co.*, 462 Mass. 715,

721 (Mass. 2012) ("By situating the new coverage within the structure of the original

policy [the insurer] clarified that all other provisions of the original policy continued to

apply, including the surface water exclusion and the anticoncurrent cause provision");

*cf. Doylestown Elec. Supply Co. v. Maryland Cas. Ins. Co.*, 1996 WL 34393843 (E.D.

Pa. Dec. 31, 1996) (construing policy in light of endorsement and concluding "[t]here is

quite simply no provision precluding the application of the concurrent causation

preamble to "water that backs up from [a] sewer or drain").  *Id*. at 5.  Plaintiff does not

deny that the ACC applies to Exclusion B.1.g.  *See* Docket No. 51 at 6-7.  There is no

apparent reason why the ACC should not apply to the language of the new Exclusion

B.1.g in the same manner it applied to the original language.  Moreover, plaintiff fails to

identify an internal conflict between the policy and the endorsement suggesting that the

new Exclusion B.1.g should not be subject to the ACC.  Therefore, the Court finds that

the ACC applies to the new language regarding sewer backup coverage provided by

the endorsement.

American Family argues that, "[i]f the jury finds that surface water or groundwater contributed to the damage [p]laintiff alleges, in any amount, then coverage for the claim must be denied pursuant to the insurance policy's ACC clause." Docket No. 52 at 11. Specifically, defendant argues that the ACC bars plaintiff's recovery because surface water and groundwater – uncovered perils – combined with the sewer backup to contribute to the damage to plaintiff's property. Docket No. 52 at 8. "An ACC denies coverage whenever an excluded peril and a covered peril combine to damage a dwelling or personal property." *Colorado Intergovernmental Risk Sharing Agency v. Northfield Ins. Co.*, 207 P.3d 839, 842 (Colo. App. 2008), *cert. granted*, 2009 WL 1485804 (Colo. May 26, 2009) (internal quotation and citation omitted).[5] In *Kane v. Royal Ins. Co. of America*, 768 P.2d 678, 685-86 (Colo. 1989), the Colorado Supreme Court interpreted the effect of an ACC and found that the insured could not recover any of his losses where those losses were caused in part by a peril excluded by the policy. In addition, the court rejected the applicability of the efficient moving cause doctrine of causation when the agreement contained an ACC. *Id*. at 684-85. Given that the ACC applies to Exclusion B.1.g, as modified by the endorsement, if the jury finds that surface water or groundwater, from a source other than a sewer or drain, directly or indirectly

[5]The Colorado Supreme Court granted review in *Northfield Insurance* on the issue of "[w]hether this court's ruling in *Kane v. Royal Ins. Co.*, 768 P.2d 678 (Colo. 1989), applies to exclude recovery under an insurance policy when a jury finds that the damage was caused 90% by a covered peril (weather event) and 10% by an excluded peril (wear and tear, rust, or deterioration). 2009 WL 1485804, at *1.

caused the plaintiff's damages, such damages are not covered by the policy.[6]

### B. Surface Water vs. Sewer Water

In its summary judgment motion, plaintiff asks the Court to construe the term

"surface water" in the policy.  Docket No. 51 at 13.  Plaintiff argues that "[r]ain water that

flowed across streets and into manhole covers . . . is not 'surface water'" and that

surface water "loses its character as such once it is directed into a man-made channel

or pipe." *Id*.  Defendant argues that the "particular path by which the storm water was

introduced into the Chateau buildings – whether through backup of sewer drains, or

through seepage over, through and around foundation walls, or through some

combination of the two – is of no moment for purposes of coverage analyses" because

flood water caused the damage.  Docket No. 69 at 14.

The Court agrees with plaintiff.  In the insurance context, surface water has been

defined as "water from melted snow, falling rain, or rising springs, lying or flowing

naturally on the earth's surface, not gathering into or forming any more definite body of

water than a mere bog, swamp, slough or marsh. . . . Surface water . . . is not of a

substantial or permanent existence, has no banks, and follows no defined course or

channel." *Front Row Theatre, Inc. v. American Mfr's. Mut. Ins. Cos.*, 18 F.3d 1343,

1347 (6th Cir. 1994) (citing *Heller v. Fire Ins. Exchange*, 800 P.2d 1006, 1008-09 (Colo.

1990)).  Multiple courts – including the Colorado Supreme Court – that have considered

this issue adopted the construction offered by plaintiff.  *See, e.g., Heller*, 800 P.2d at

---

[6]Since the Court agrees with defendant that the ACC applies to Exclusion B.1.g as modified, defendant's argument in Section B of its motion for summary judgment is moot.  *See* Docket No. 52 at 11-13.

1009; *Surabian Realty Co., Inc.*, 462 Mass. at 722 ("[N]either the surface water exclusion nor the anticoncurrent cause provision would bar coverage when heavy rain enters a sewer system, is diverted out of the system, and is then the sole cause of damage to property.  The water would have lost its character as surface water on entering the sewer system and, at the moment of damage, the water would have been defined solely as drain or sewer water.").  In *Heller,* 800 P.2d at 1009, the Colorado Supreme Court found that surface water from runoff of melted snow "lost its character as surface water when it was diverted" into man-made trenches.  The court noted that the trenches were "'defined channels' that diverted the regular flow of water, preventing 'percolation, evaporation, or natural drainage.'"  *Id.*  In *Surabian Realty Co, Inc.*, 462 Mass. at 716, a parking lot drain became clogged during a strong rain storm, causing flooding and damage to the lower level of a building.  The parties agreed that the damage "resulted from the combination of water that backed up after entering the parking lot drain and water that, as a result of the blockage, never entered the drain and remained surface water." *Id.* at 718.  The building was covered by an insurance policy containing an ACC and an exclusion for surface water.  *Id.* at 716-17.  The insured purchased an endorsement to the policy that provided additional coverage for "loss or damage caused by water that backs up or overflows from a sewer, drain, or sump." *Id.* at 717.  The insurer denied the claim on the grounds that the damage to the building was caused by surface water.  *Id.*  In construing the term "water that backs up or overflows from a sewer, drain or sump," the court found that the policy, as amended by the endorsement, excluded "damage caused by flood waters that spread over the

surface of the ground without having entered a drain, but [does] cover damage caused by water that backed up after entering a drain." *Id*. at 719.  Defendant cites no authority for its position that surface water that enters a sewer system retains its character as surface water and is not considered sewer water.  The Court finds that surface water that enters a sewer system and backs up through or overflows from a sewer or drain is covered by the policy.[7]

Having rejected defendant's theory regarding the character of water that backs up out of a sewer, the Court turns to the issue of the character of water that damaged Chateau Village Condos.  Although the parties discuss many facts in connection with the briefing, they do ask the Court to enter summary judgment based on these facts. *See, e.g,* Docket No. 52 at 11 ("If the jury finds that surface water or groundwater contributed to the damage [p]laintiff alleges . . .").  In the event that the parties ask the Court to enter summary judgment on the facts, the Court finds that there are genuine issues of material fact regarding the character of the water that caused the damage to Chateau Village Condos that preclude summary judgment.  *See, e.g.,* Docket No. 52 at 6, SUMFs 14, 17, 19.  The Court also finds that there are genuine issues of material fact as to whether the damage to Chateau Village Condos was exclusively caused by sewer water backup.  *See id*.

### D.  <u>Common Law and Statutory Bad Faith Breach of an Insurance Contract</u>

Plaintiff brings both common law and statutory bad faith claims.  Docket No. 3 at

---

[7]Defendant's response to plaintiff's motion for partial summary judgment also discusses the term "flood," Docket No. 69 at 13, but defendant did not seek summary judgment as to the meaning of "flood" and therefore the Court will not consider it.

3, 5.  To establish the common law "tort of bad faith breach of an insurance contract, a plaintiff must show that the insurer acted both unreasonably and with knowledge of or reckless disregard of its unreasonableness."  *Hyden v. Farmers Ins. Exchange*, 20 P.3d 1222, 1226 (Colo. App. 2000) (citing *Dale v. Guaranty National Insurance Co.*, 948 P.2d 545 (Colo. 1997)).

Plaintiff's statutory bad faith claim is based on Colo. Rev. Stat. § 10-3-1115(1), which provides that "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant."

American Family seeks summary judgment on plaintiff's bad faith claims on the ground that its denial of coverage was based on "fairly debatable" reasons.  Docket No. 52 at 2.  Specifically, American Family argues that its denial of the Association's claim was timely and reasonable in light of the facts and circumstances known to American Family at the time of its denial.  *Id*. at 16.  The Association asserts that American Family's denial was not reasonable and that a jury could conclude that American Family could not reasonably rely on the statements offered by Ms. Feldman and Mr. McConnell.  Docket No. 70 at 12-13.[8]

---

[8]The Association attaches a 27-page expert opinion from Professor Garth H. Allen that American Family acted unreasonably in handling Chateau Village's claims. Docket No. 70-6.  The Association does not offer any argument based on this report or cite any references to genuine factual disputes elucidated in the report.  *See* Docket No. 70 at 13.  The Court notes that Prof. Allen's interpretation of the policy is that "the anti-concurrent causation language is not included in the Enhancement Endorsement and thus does not apply to sewer-back up coverage."  Docket No. 70-6 at 7.  This interpretation of the policy is contrary to the Court's interpretation of the policy and is therefore irrelevant.

Regarding plaintiff's common law bad faith claim, "[u]nder Colorado law, it is reasonable for an insurer to challenge claims that are 'fairly debatable.'" *Vaccaro v. Am. Family Ins. Group,* 275 P.3d 750, 759 (Colo. App. 2012) (citing *Zolman v. Pinnacol Assur.*, 261 P.3d 490, 496 (Colo. App. 2011). The issue for liability under a statutory bad faith claim is "whether an insurer denied benefits without a reasonable basis." *Vaccaro*, 275 P.3d at 760. However, "if a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was 'fairly debatable' (i.e., . . . reasonable minds could disagree as to the coverage-determining facts or law), . . . this weighs against a finding that the insurer acted unreasonably." *Fisher v. State Farm. Mut. Auto. Ins. Co.*, --- P.3d ----, 2015 WL 2198515, at *4 (Colo. App. May 7, 2015) (citing *Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010)).

When resolving claims, "[a]n insurer is under no obligation to negotiate a settlement when there is a genuine disagreement as to the amount of compensable damages payable under the terms of an insurance policy." *Vaccaro,* 275 P.3d at 759 (citing *Bucholtz v. Safeco Ins. Co.*, 773 P.2d 590, 593 (Colo. App. 1988). Here, there are disputed issues about what defendant's investigators were told and about what conclusions the investigators reached that a reasonable jury may find material in determining whether plaintiff can prove its bad faith claims. "What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury." *Id*. (citing *Zolman*, 261 P.3d at 497). Accordingly, the Court finds that defendant is not entitled to summary judgment on plaintiff's statutory and common law bad faith claims.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiff's Partial Motion for Judgment as a Matter of Law

Pursuant to F.R.C.P. 56 [Docket No. 51] is **GRANTED** in part and **DENIED** in part.  It is

further

**ORDERED** that defendant's Motion for Summary Judgment [Docket No. 52] is

**GRANTED** in part and **DENIED** in part.

DATED March 16, 2016.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge